ANDREW MAST (CSBN 284070)
GABRIEL MARTINEZ (CSBN 275142)
MICHAEL RABKIN (ILRN 6293597)
ALBERT B. SAMBAT (CSBN 236472)
U.S. Department of Justice
Antitrust Division
450 Golden Gate Avenue
Box 36046, Room 10-0101
San Francisco, CA 94102
albert.sambat@usdoj.gov
Telephone: (415) 934-5300

Attorneys for the United States

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| UNITED STATES OF AMERICA | CASE NO. CR 11-00799 CRB |
|---|---|
| v. | **UNITED STATES' SENTENCING MEMORANDUM AND MOTION FOR DOWNWARD DEPARTURE PURSUANT TO U.S.S.G. §5K1.1** |
| CRAIG LIPTON, | |
| Defendant. | |

The United States respectfully requests that this Court sentence defendant CRAIG LIPTON to (1) serve seven months of custody, (2) serve three years of supervised release, and (3) pay a criminal fine of $3,000, a $100 special assessment, and $13,416.50 in restitution. This sentencing recommendation is based on the government's motion for a downward departure of 40 percent from the low end of the Guidelines range for substantial assistance is consistent with the parties' plea agreement.

U.S.' SENT'G MEMO                                1
*United States v. Lipton*, CR 11-00799 CRB

# BACKGROUND

Defendant Lipton is charged with participating in a conspiracy to suppress and restrain competition by rigging bids to obtain selected properties offered at public auctions in San Francisco County from April 2010 through January 2011. Lipton partnered with another coconspirator, Keith Goodman, to purchase properties pursuant to bid-rigging agreements in San Francisco County. Presentence Report ("PSR") ¶ 15. Lipton purchased homes at the auctions with funds he received from Goodman. *Id.* Lipton's first involvement with the conspiracy occurred in approximately April 2010 when he was approached by Jim Appenrodt, working on behalf of co-conspirator Joe Giraudo, who offered Lipton $5,000 in exchange for not bidding against him on a property located at 1435 Thomas Avenue, San Francisco. PSR ¶ 16. Then, during another auction for a property located at 1357 Plymouth Avenue, San Francisco, Lipton was approached by another conspirator, Mo Rezaian, and was offered $2,000 to stop bidding. *Id.* Lipton agreed to accept the money and, from that point on, made and received payoffs in furtherance of the conspiracy. *Id.*

On October 27, 2011, Lipton was charged by information with one count of bid rigging and one count of conspiracy to commit mail fraud in San Francisco County. Dkt. 1. On December 14, 2011, Lipton pleaded guilty and began cooperating with the government's investigation. Dkt. 11. On September 19, 2017, by stipulation, Lipton withdrew from his original plea agreement and entered a new plea agreement to bid-rigging charges only. Dkt. 56.

Lipton's plea agreement reflects his participation in rigging 11 properties in San Francisco County and a volume of commerce of $1,337,800. PSR ¶ 15. The volume of commerce does not reflect the bid-rigging agreements that Lipton participated in for which he received payoff money. Lipton received payoffs for agreeing not to bid on eight properties. *Id.*
//
//
//
//
//

# ARGUMENT

## A. Sentencing Guidelines Calculations

### 1. Criminal History

In Paragraph 12 of the plea agreement, the parties agree that Lipton's Criminal History Category is determined by the Court. The PSR calculates defendant's Criminal History Category as I based on zero criminal history. PSR ¶¶ 36-39.

### 2. Offense Level

The PSR calculates the total offense level as 13, consistent with the plea agreement. PSR ¶ 34. This calculation includes a one-level increase to the base offense level of 12 for conduct involving the submission of non-competitive bids, a two-level increase for a volume of commerce exceeding $1 million, and a downward reduction of two levels for acceptance of responsibility. PSR ¶¶ 25-33. U.S. Sentencing Guidelines Manual ("U.S.S.G.") §§2R1.1(b)(1), 2R1.1(b)(2)(A), and 3E1.1(a) (U.S. Sentencing Comm'n 2016).

Under the Sentencing Guidelines, an offense level of 13 and Criminal History Category of I results in a sentence ranging from 12 to 18 months of imprisonment.

### 3. Fine and Restitution

The PSR calculates a fine range of $20,000 to $66,890, consistent with the plea agreement. PSR ¶ 72; U.S.S.G. §2R1.1(c)(1) (fine range shall be from one to five percent of the volume of commerce, but not less than $20,000). In the plea agreement, the government agreed to recommend a fine between $3,000 and $30,000. Dkt. 56. This fine range was initially agreed to by the parties in the original plea agreement, based on the application of the fraud Guidelines, and was carried over to the revised plea agreement. In conjunction with its custodial recommendation, the government recommends a $3,000 fine. The government recommends restitution in the amount of $13,416.50, consistent with the plea agreement. Dkt. 56.

## B. Basis for Downward Departure for Substantial Assistance

Pursuant to Section 5K1.1 of the Guidelines, the government moves for a downward departure for substantial assistance to the investigation. The government recommends a 40

//

percent reduction from the low end of the Guidelines range of 12 months, resulting in a sentence of seven months.

The timing, significance, nature, and extent of Lipton's cooperation warrant a 40 percent reduction. Lipton entered his plea agreement pre-indictment on December 14, 2011, and immediately began cooperating in the investigation. His plea may have influenced the decisions of defendants who pleaded after him to also plead guilty and accept responsibility. Lipton provided two candid interviews with the FBI in which he produced and reviewed documents such as spreadsheets and auction records. During his interviews, Lipton provided corroborating information regarding the operation of the conspiracy, the conduct of his partnership with other conspirators, especially against Joe Giraudo and other members of the "Big 5," and details of various bid-rigging agreements. Lipton also reviewed surveillance photographs to assist the FBI in identifying other suspected conspirators. Lipton also made himself readily available to the prosecution team in the event he would be needed for further information or potential testimony.

For these reasons, a 40 percent downward departure for substantial assistance to the investigation and prosecution of these cases is appropriate.

**C.     Sentencing Recommendation**

The government's recommendation of seven months is reasonable and not greater than necessary in light of the factors articulated in 18 U.S.C. § 3553. The Court's sentence must reflect the seriousness of the offense, promote respect for the law, and afford adequate deterrence to future bid-rigging offenses and white-collar crime generally.

Given the magnitude of the financial harm caused by defendant's conduct, the government's recommendation, which includes a custodial term, is appropriate and consistent with the commentary in the applicable Guidelines. The commentary makes clear that "prison terms for [Antitrust] offenders should be . . . common" and "alternatives such as community confinement [should] not be used to avoid imprisonment of antitrust offenders." U.S.S.G. §2R1.1, cmt. n. 5 & Background. Given Lipton's substantial assets, a fine alone—in the absence of a custodial term—would not serve as an adequate deterrent. The foreclosure auctions were vulnerable to bid rigging, especially in the aftermath of the foreclosure crisis, when the auctions

were flooded with investment opportunities. Lipton did not originate the conspiracy, but he joined in willingly.

The government's recommended sentence also adequately considers the history and characteristics of the defendant, including his early decision to accept responsibility, his willingness to pay restitution and cooperate in the investigation, and his lack of criminal history.

**CONCLUSION**

For the foregoing reasons, the United States respectfully requests that the Court grant the government's motion for a downward departure of 40 percent from the low end of the Guidelines range for substantial assistance and sentence defendant Lipton to (1) serve seven months of custody, (2) serve three years of supervised release, and (3) pay a criminal fine of $3,000, a $100 special assessment, and $13,416.50 in restitution.

Dated: April 19, 2018                                  Respectfully submitted,

/s/
ALBERT B. SAMBAT
Trial Attorney
United States Department of Justice
Antitrust Division